**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL SZTROM and<br>DAVID SZTROM,<br><br>Plaintiffs,<br><br>v.<br><br>SECURITIES AND EXCHANGE<br>COMMISSION,<br><br>Defendant. | Civil Action No. 1:24-cv-03548-CRC |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. The Court Lacks Subject-Matter Jurisdiction Over Counts Three and Four. ........ 1

i. The statutory scheme clearly evinces Congress's intent to preclude district-court jurisdiction. ........ 2

ii. Counts Three and Four are procedural claims, not structural constitutional claims. ........ 3

iii. The Thunder Basin factors confirm that Counts Three and Four are of the type Congress intended to be reviewed within the statutory scheme. ........ 6

B. The Sztroms' Complaint Fails to State a Claim on Which Relief May Be Granted. ........ 8

i. Due Process (Count One) ........ 8

ii. Seventh Amendment (Count Three) ........ 11

iii. Article III (Count Two) ........ 13

iv. Statutory Right to Hearing (Count Four) ........ 14

III. CONCLUSION ........ 17

## I. INTRODUCTION

Plaintiffs' opposition shows little engagement with many of the arguments and authorities set out in the SEC's motion to dismiss. Where Plaintiffs do respond to specific cases, they consistently encourage the Court to ignore binding precedent based on speculation that the Supreme Court may someday rule differently. This approach cannot provide the legal grounding that Plaintiffs' claims lack. The Court lacks jurisdiction over Counts Three (Seventh Amendment) and Four (right to hearing) because Congress has rested exclusive jurisdiction over such challenges in the court of appeals via the Advisers Act's judicial review mechanism. And regardless, Plaintiffs have failed to state a claim for which relief can be granted for any of their claims. The Court should therefore grant the SEC's motion to dismiss in full.

## II. ARGUMENT

### A. The Court Lacks Subject-Matter Jurisdiction Over Counts Three and Four.

The controlling test for whether a statutory review process deprives district courts of jurisdiction requires courts to first examine whether Congress's intent to preclude such jurisdiction is "fairly discernible" in the statutory scheme. If such an intent is discernible, courts must determine whether the particular "claims are of the type Congress intended to be reviewed within this statutory structure." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994). That latter inquiry involves application of the so-termed *Thunder Basin* factors: (1) whether "a finding of preclusion could foreclose all meaningful judicial review," (2) whether the claims are "wholly collateral to a statute's review provisions," and (3) whether the claims are "outside the agency's expertise." *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (quoting *Thunder Basin*, 510 U.S. at 207). The SEC's opening brief explains why the Court lacks

jurisdiction over Plaintiffs' Seventh Amendment claim (Count Three) and statutory right-to-hearing claim (Count Four) under these principles, and Plaintiffs' rebuttals are without merit.

*i. The statutory scheme clearly evinces Congress's intent to preclude district-court jurisdiction.*

Plaintiffs do not squarely rebut the SEC's contention that 15 U.S.C. § 80b-13(a) evinces a fairly discernable congressional intent to preclude district court jurisdiction. *See* Mot. 6. Plaintiffs do, however, attempt to argue that the statutory review process applies only to challenges to a "final SEC order." Opp. 13. Plaintiffs' theory is that because no such final order has been issued here—where the follow-on proceeding is still ongoing—the text of section 80b-13(a) does not apply to their claims. *See id.*[1]

This theory was already considered and rejected in *Thunder Basin* itself. *See* 510 U.S. at 208 (concluding that although the Mine Act "is facially silent with respect to pre-enforcement claims," the existence of the statutory review process clearly "demonstrates that Congress intended to preclude [such] challenges"). Like the Mine Act considered in *Thunder Basin*, the "comprehensive review process" in section 80b-13(a) "does not distinguish between preenforcement and postenforcement challenges, but applies to all violations of the Act and its regulations." *Id.* To hold otherwise would permit respondents to "evade the statutory-review

[1] Plaintiffs note that section 80b–13(a) is "functionally identical" to the claim-channeling provision at issue in *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175, 209 (2023). *See* Opp. 10. But this only confirms that section 80b–13(a) evinces congressional intent to preclude district jurisdiction. The Supreme Court's decision impliedly found that the claim-channeling provision did indeed evince congressional intent to preclude district jurisdiction by proceeding directly to the *Thunder Basin* factors. *See Axon*, 598 U.S. at 185. And to the extent Plaintiffs raise this point in the hopes of analogizing *Axon*'s *Thunder Basin* analysis to their own claims, such analogy is inapposite. The *Thunder Basin* inquiry turns on the nature of the claim, not the nature of the claim-channeling provision. *See id.* at 187 (noting that the *Thunder Basin* factors ask "whether the particular claims brought were 'of the type Congress intended to be reviewed within this statutory structure'" (quoting *Thunder Basin*, 510 U.S. at 208)); *see also infra* pp. 6–8 (discussing *Thunder Basin* factors).

process" by rushing to court for an injunction before an order is issued, upending the judicial review process Congress carefully devised. *Id.* at 216.

Plaintiffs attempt to dismiss *New York Republican State Committee v. SEC*, 799 F.3d 1126, 1130 (D.C. Cir. 2015), as inapposite for similar reasons: because it involved a challenge to an SEC rule, whereas Plaintiffs here challenge the SEC's procedures for administrative proceedings. Opp. 13 (citing *N.Y. Republican State Comm.*, 799 F.3d at 1128–34). But this distinction is irrelevant for the same reasons explained in *Thunder Basin*: the statutory structure does not distinguish between pre-enforcement and post-enforcement challenges, nor would it be logical to allow such a loophole. *See* 510 U.S. at 208. *New York Republican State Committee* reaffirmed that the Advisers Act—and specifically section 80b-13(a)—evinces congressional intent to grant "exclusive jurisdiction" to courts of appeals over challenges to SEC "order[s]," which includes "any agency action that is otherwise susceptible of review on the basis of the administrative record alone." *Id.* at 1131. Plaintiffs' procedural challenges to the follow-on proceeding fall cleanly within that definition.[2]

*ii. Counts Three and Four are procedural claims, not structural constitutional claims.*

Plaintiffs attempt to escape claim-channeling here by relying on a warped interpretation of *Axon*, 598 U.S. 175. As the SEC explained, *see* Mot. 7, *Axon* distinguished between structural constitutional claims (over which a district court has subject-matter jurisdiction despite the existence of a claim-channeling statute) and procedural claims (over which a claim-channeling

[2] For the same reason, Plaintiffs' argument that 28 U.S.C. § 1331 vests district courts with jurisdiction to hear their claims also fails. *See* Opp. 14. While section 1331 provides district courts with federal-question jurisdiction, Plaintiffs themselves recognize that section 1331 is not applicable where "Congress has *actually* carved out some exception in some other statute." *Id.* (quoting *Axon*, 598 U.S. at 209 (Gorsuch, J., concurring)) (quotations omitted). Here, Congress has "carved out" such an "exception" in section 80b-13(a). *Id.*

statute strips the district court of subject-matter jurisdiction), *see Axon*, 598 U.S. at 189. Plaintiffs protest this distinction, arguing that *Axon*'s discussion of "procedures" was merely a "passing reference" with no clear meaning. Opp. 12–13.

To the contrary, *Axon* repeatedly and explicitly distinguished between "challenges . . . to the structure or very existence of any agency" and challenges "to the commonplace procedures agencies use to make . . . decision[s]." *Axon*, 598 U.S. at 189; *see also id.* at 193 (contrasting "challeng[es] [to an agency's] power to proceed at all" with challenges to "actions taken in the agency proceedings"); *id.* (contrasting "object[ion] to the [agency's] power generally" with objection "to anything particular about how that power was wielded"). The Court took care to explain that the claim-channeling provision did not extend to the *Axon* plaintiff's separation-of-powers claim because it was a "structural constitutional claim," *id.* at 191, whereas "the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision," *id.* at 193, are subject to a claim-channeling provision.

*Axon* thus recognized structural constitutional claims as a "narrow exception to Congress's prescribed path for judicial review of agency action for facial challenges to the constitutional structure of administrative agencies' ability to operate." *Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, No. 23-5096, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023); *see also, e.g.*, *Avila v. NLRB*, No. 24-cv-1688-RC, 2025 WL 859223, at *5 (D.D.C. Mar. 19, 2025) ("The key question here is whether [the plaintiff's] challenge is more like the process-based challenge in *Jarkesy*, or rather more akin to the structural issues raised in *Free Enterprise Fund* and *Axon*."). Despite *Axon*'s language explicitly limiting this narrow exception to structural constitutional challenges, Plaintiffs apparently argue that any procedural challenge is excepted from a claim-channeling provision. But as the D.C. Circuit explained, "[n]othing in *Axon* holds

that every 'nonfrivolous' constitutional objection to every agency proceeding, especially fact-bound as-applied claims to a particular exercise of agency jurisdiction, can bypass the congressional scheme established for judicial review." *Loma Linda-Inland Consortium for Healthcare Educ.*, 2023 WL 7294839, at *11.

As set out in the SEC's opening brief, Plaintiffs' Seventh Amendment and right-to-hearing claims are not structural constitutional challenges—they are procedural challenges that do not fit within *Axon*'s narrow exception. Mot. 8. Indeed, on its face, Plaintiffs' *statutory* right-to-hearing claim is not a structural *constitutional* challenge. Plaintiffs' own brief belies the procedural nature of their claims. Plaintiffs describe their jury-trial and statutory right-to-hearing claims as challenges to "*how* the SEC adjudicates [enforcement] matters," Opp. 11 (emphasis in original), and to "the proceeding's deficiencies," *id.* at 13. Plaintiffs concede that they challenge "the lack of the 'procedures' of a jury trial or a right to a hearing." *Id*. These are challenges to the "procedures agencies use to make a decision," *Axon*, 598 U.S. at 189, and they therefore fall within the exclusive jurisdiction of the appropriate court of appeals under section 80b-13(a). Plaintiffs' Seventh Amendment claim also necessarily "relate[s] to the subject of the enforcement actions," *id.* at 189, 193, as Plaintiffs premise that claim on the relief the agency may impose, *see* Opp. 24 (arguing that the particular "statutory penalty" sought in the proceeding triggers a jury right).

For these reasons, courts within the District have consistently held that the *Thunder Basin* factors weigh against district court jurisdiction for similar claims. *See, e.g.*, *Vape Central Grp., LLC v. FDA*, 2025 WL 637416, at *9 (D.D.C. Feb. 27, 2025) (concluding that "the *Thunder Basin* factors weigh against district court jurisdiction for [plaintiff's] Seventh Amendment claims" regarding FDA administrative proceeding); *VHS Acquisition Subsidiary No. 7 v. NLRB*, 2024 WL 4817175, at *4 (D.D.C. Nov. 17, 2024) (similar as to NLRB administrative proceeding), *appeal*

*dismissed sub nom. VHS Acquisition Subsidiary No. 7, Inc. v. NLRB*, No. 24-5270, 2024 WL 5232662 (D.C. Cir. Dec. 26, 2024). Plaintiffs have proffered no reason to depart from that conclusion here.

*iii. The* Thunder Basin *factors confirm that Counts Three and Four are of the type Congress intended to be reviewed within the statutory scheme.*

Plaintiffs' misunderstanding of *Axon* infects their analysis of the *Thunder Basin* factors, which are used to determine whether the particular "claims are of the type Congress intended to be reviewed within this statutory structure." *Thunder Basin*, 510 U.S. at 207. In addressing those factors, Plaintiffs copy *Axon*'s language for structural constitutional claims to describe their own procedural claims—including even their non-constitutional right-to-hearing claim. *See, e.g.*, Opp. 11 (describing their jury-trial and statutory right-to-hearing claims as challenges to "'an illegitimate proceeding, led by an illegitimate decisionmaker,'" and to "the SEC's 'power generally' to adjudicate follow-on administrative proceedings" (quoting *Axon*, 598 U.S. at 191, 193)). But Plaintiffs' own conflation of structural constitutional claims and procedural claims does not make it so. And more to the point, Plaintiffs do not even attempt to engage with any of the SEC's arguments or bevy of cited authority on the *Thunder Basin* factors. *See* Mot. 8–11.

Plaintiffs' discussion of the first *Thunder Basin* factor—whether preclusion would foreclose meaningful judicial review—is comprised solely of a bare assertion that Plaintiffs are subject to a "'here-and-now' injury of subjection to an unconstitutionally structured decisionmaking process." Opp. 10 (quoting *Axon*, 598 U.S. at 192). But the limited "here-and-now injury" recognized in *Axon* related specifically to "structural constitutional" deficiencies, 598 U.S. at 191, whereas typical "statutory and constitutional claims . . . can be meaningfully addressed

in the Court of Appeals," *Thunder Basin*, 510 U.S. at 215; *see also, e.g.*, *Vape Cent. Grp., LLC v. FDA*, 2025 WL 637416, at *6 (Seventh Amendment does not present "here-and-now" injury).[3]

Even aside from conflating structural constitutional claims and procedural claims, Plaintiffs entirely ignore the SEC's explanation that the D.C. Circuit held in a controlling decision in *Jarkesy v. SEC*, 803 F.3d 9, 13, 17–22 (D.C. Cir. 2015), that Seventh Amendment claims can be meaningfully reviewed by a court of appeals pursuant to Section 80b-13(a), *see* Mot. 8–9. Plaintiffs also ignore the SEC's explanation that "several courts have recognized that *Axon* does not disturb the conclusion that jury-trial claims can receive meaningful judicial review in the courts of appeals." *Id.* at 10 (collecting cases); *see also, e.g.*, *Ponte v. Fed. Deposit Ins. Corp.*, No. 24-CV-2379 (APM), 2024 WL 4730602, at *8 (D.D.C. Oct. 11, 2024) (collecting cases for proposition that "[i]t is well-established that the harm resulting from the denial of a jury trial can be remedied on appeal, even after the case has already been tried—the reviewing court simply orders a new trial"); *Vape Cent. Grp., LLC*, 2025 WL 637416, at *6 ("[E]very district court that has considered the question post-*Jarkesy* has held that the relevant statutory procedures for challenging final administrative orders provide a sufficient opportunity for 'meaningful review' of any Seventh Amendment defense.").

Plaintiffs' discussion of the second *Thunder Basin* factor—whether the claims are "wholly collateral" to the statutory review provisions, *Axon*, 598 U.S. at 186—is similarly deficient. Again, Plaintiffs merely summarily assert that their Seventh Amendment and statutory right-to-hearing claims are "not challenging actions taken in the agency proceedings," but rather are "challenging the Commission's power to proceed at all." Opp. 11 (quoting *Axon*, 598 U.S. at 192–93). But as

[3] Indeed, *Axon* itself expressly recognized that "review of agency action in a court of appeals can alone 'meaningfully address' a party's claims," including, for example, an "asserted entitlement to an earlier hearing." *Axon*, 598 U.S. at 190 & n.2.

Plaintiffs themselves concede, Plaintiffs' jury-trial and right-to-hearing claims are challenges to "*how* the SEC adjudicates [enforcement] matters," *id.* (emphasis in original)—in other words, they are procedural challenges and are therefore not "collateral," *Axon*, 598 U.S. at 192.

As to the third factor—whether the claims fall "outside the agency's expertise"—Plaintiffs again ignore the SEC's arguments and authority. As explained, the D.C. Circuit has already held that addressing a jury-trial challenge does not fall outside the SEC's expertise. *See Jarkesy*, 803 F.3d at 28. And Plaintiffs' statutory right-to-hearing claim is also clearly within the SEC's expertise, as it involves the very procedures that the SEC utilizes in its follow-on proceedings and the rights available to respondents in those proceedings. *See* Mot. 10.

**B. The Sztroms' Complaint Fails to State a Claim on Which Relief May Be Granted.**

Plaintiffs do not plausibly allege any claim against the SEC, and the Court should therefore dismiss any claims over which it concludes it has jurisdiction.

*i. Due Process (Count One)*

Plaintiffs do not even attempt to argue that their due process challenge to the SEC's combination of prosecutorial and adjudicative functions could survive the D.C. Circuit's decision in *Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099 (D.C. Cir. 1988), which rejected a due process claim nearly identical to theirs. They argue only that this Court should discard *Blinder* because it was "wrong" and purportedly "at odds with more recent decisions of the U.S. Supreme Court." Opp. 15. To state that argument is to refute it: this Court must "follow controlling circuit precedent until either [the Circuit], sitting en banc, or the Supreme Court, overrule[s] it." *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997).

In any event, recent Supreme Court jurisprudence is not "at odds" with *Blinder*. Plaintiffs attack *Blinder* as "out of step with the current legal landscape," Opp. 18, yet fail to explain how.

Nor is it otherwise clear from Plaintiffs' cited cases. Plaintiffs loftily argue that *Williams v. Pennsylvania*, 579 U.S. 1 (2016), *In re Murchison*, 349 U.S. 133 (1955), *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *Jarkesy*, 603 U.S. 109, each rejected the "elevati[on]" of "expedience and institutional deference over individual rights," Opp. 19. But none of those cases implicate *Blinder* at all, much less do any of them evince the total "eviscerat[ion]" of that case's reasoning that would be required to qualify as an overruling by implication. *Rai Care Ctrs. of Md. I, LLC v. U.S. Off. of Personnel Mgmt.*, 2024 WL 3694433, at *13 (D.D.C. Aug. 7, 2024) (quotation omitted).

For example, it is unclear how *In re Murchison* evinces a contrary, novel Supreme Court approach, as that case was decided in 1955—over three decades before *Blinder*. And Plaintiffs' reliance on *Williams*, *see* Opp. 16–17, fails to engage with the SEC's explanation that that case is inapposite, *see* Mot. 14, especially in light of the Supreme Court's express distinction in *Withrow v. Larkin* between "the situation of administrative agencies [and] the prototypical situation of a judge performing combined functions," *Blinder*, 837 F.2d at 1105 (citing *Withrow v. Larkin*, 421 U.S. 35 (1975)); *see also* Opp. 17 (recognizing that *Williams* "involved the same individual (as opposed to agency) in the roles of prosecutor and judge," yet failing to explain how "the same concerns" are nevertheless implicated). Nor do Plaintiffs explain how *Loper Bright*—which overturned *Chevron* deference—or *Jarkesy*—which held that the SEC's imposition of civil penalties for securities fraud through an administrative proceeding violated the Seventh Amendment right to a jury trial—have any bearing on *Blinder* or the role of due process in administrative adjudication.[4]

[4] Plaintiffs also cite in a footnote, *see* Opp. 17 n.6, to *Trump v. J.G.G.*, in which the Supreme Court held that non-citizen "detainees subject to removal orders under the [Alien Enemies Act] are entitled to notice and an opportunity to challenge their removal," 145 S. Ct. 1003, 1006 (2025) (per curiam). Plaintiffs' due process claim, of course, involves no dispute related to non-citizen

Plaintiffs also broadly assert that the Supreme Court has recently issued decisions "involving limits to the SEC's power." Opp. 19. But Plaintiffs' cited cases concern wholly unrelated issues like Article II appointment and removal procedures, the application of a statute of limitations to SEC disgorgement or civil penalty proceedings, claim-channeling provisions, and other matters unrelated to Plaintiffs' due process assertions. *See id.* at 19–20. These cases provide no basis to ignore binding precedent foreclosing Plaintiffs' due process claim.

Regardless, the Supreme Court's decision in *Withrow* independently defeats Plaintiffs' claim. *See* 421 U.S. at 58 (concluding that in the context of administrative agencies, "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation"); *see also, e.g.*, *Flamingo Hilton-Laughlin v. NLRB*, 148 F.3d 1166, 1174 (D.C. Cir. 1998) (concluding that *Withrow* was "dispositive" in holding that the NLRB's ability "to seek preliminary injunctive relief against an employer in the district court does not deprive the employer of a neutral decisionmaker in subsequent proceedings before the Board"); *Meta Platforms, Inc. v. FTC*, 2024 WL 1549732, at *1 (D.C. Cir. Mar. 29, 2024) (applying *Withrow*). The mere fact that the Commission previously approved a civil enforcement action against Plaintiffs in federal court on antifraud grounds does not show that the Commissioners are "psychologically wedded," *Withrow*, 421 U.S. at 57, to any particular position on whether the public interest supports a remedial order against them under 15 U.S.C. § 80b-3(e)(4) & (f), which is a separate question.[5]

---

detainees, removal orders, or the provision of notice and opportunity to be heard. The mere fact that the Supreme Court has recently issued a decision related broadly to due process is of no relevance here.

[5] Contrary to Plaintiffs' assertion that agency decisionmakers are inclined towards "potential prejudgment, and institutional interest in the outcome," Opp. 18, public officers are entitled to a "presumption of regularity," pursuant to which, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties," *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15 (1926).

Finally, Plaintiffs suggest that follow-on proceedings are inherently unfair based on the percentage of cases that result in bars. *See* Opp. 16. But an "empirical investigation" of a "large dataset" of SEC proceedings found "no robust correlation between the selected forum and case outcome" when comparing between administrative adjudication and federal court adjudication. Urska Velikonja, *Are the SEC's Administrative Law Judges Biased? An Empirical Investigation*, 92 Wash. L. Rev. 315, 336 (2017); *see also id.* at 339 (noting that "[t]he SEC *should* win follow-on actions because they necessarily follow civil enforcement actions were the agency prevailed).

Accordingly, Plaintiffs' due process claim should be dismissed.

*ii. Seventh Amendment (Count Three)*

As the Supreme Court has reiterated, the Seventh Amendment applies to claims that are "legal in nature," not claims that are "of equity." *Jarkesy*, 603 U.S. at 123. Plaintiffs do not attempt to show that 15 U.S.C. § 80b-3(e)(4) & (f) is akin to any legal cause of action—and as the SEC has explained, it is not. *See* Mot. 17. Plaintiffs' theories for why a bar or suspension from the securities industry should nevertheless be construed as a legal remedy are unpersuasive. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999) ("It is settled law that the Seventh Amendment does not apply" to "suits seeking only injunctive relief."); *Am. Educ. Rsch. Assoc., Inc. v. Public.Resource.Org, Inc.*, 78 F. Supp. 3d 542, 550 (D.D.C. 2015) (similar).

Plaintiffs protest that such a remedial order is legal in nature because it would be imposed to "punish and deter" them. Opp. 24. But Plaintiffs' reliance on *Jarkesy* for this proposition is misplaced. *Jarkesy*'s distinction between a remedy "designed to punish or deter" and a remedy designed "to 'restore the statute quo'" was in the context of distinguishing whether a monetary remedy was legal or equitable. 603 U.S. at 124 (quoting *Tull v. United States*, 481 U.S. 412, 422

(1987)) (noting that "monetary relief can be legal or equitable"). The Court never suggested that the same analysis applied to other, non-monetary remedies. *See generally id.* In any event, the D.C. Circuit has already rejected this argument. In *Kornman v. SEC*, the court held that an order "debar[ring] investment advisers . . . is remedial in nature because it is designed to protect the public, and the sanction is not historically viewed as punishment." 592 F.3d 173, 188 (D.C. Cir. 2010); *see also, e.g.*, *PAZ Securities, Inc. v. SEC*, 566 F.3d 1172, 1175–76 (D.C. Cir. 2009) (SEC's expulsion of member from National Association of Securities Dealers was remedial, not punitive).

Plaintiffs' cited authorities do not overcome this binding precedent.[6] Plaintiffs cite a concurrence in *Saad v. SEC*, 873 F.3d 297, 304 (D.C. Cir. 2017)—but in that concurrence, then-Judge Kavanaugh explicitly recognized that binding precedent in the D.C. Circuit considered "various expulsions or suspensions as remedial," not punitive.[7] *Id.* Plaintiffs' citation to *Free Enterprise Fund* similarly proves nothing. *See* Opp. 22 (citing *Free Enter. Fund*, 561 U.S. at 485). The Supreme Court in *Free Enterprise Fund* acknowledged that "a permanent ban on a person's associating with any registered firm" was a "severe sanction[]" but did not suggest that such a sanction was punitive rather than remedial in nature. *Free Enter. Fund*, 561 U.S. at 485.

Plaintiffs also describe the remedial order as a "statutory penalty" not akin to an injunction. Opp. 24. Preliminarily, the Supreme Court has made clear that "whether th[e] claim is statutory

---

[6] Plaintiffs include many of these citations in their Article III section, rather than their Seventh Amendment section. *See* Opp. 22.

[7] Indeed, the D.C. Circuit has since explicitly rejected then-Judge Kavanaugh's argument in that concurrence. The concurring argument was premised on the theory that the Supreme Court's decision in *Kokesh v. SEC*, 581 U.S. 455 (2017), overruled the D.C. Circuit's line of cases holding that expulsions and suspensions are remedial, *see Saad*, 873 F.3d at 304–05. The D.C. Circuit directly rejected that theory when the case returned to D.C. Circuit following remand back to agency. *See Saad v. SEC*, 980 F.3d 103, 105 (D.C. Cir. 2020). In a unanimous three-judge panel, the D.C. Circuit held that *Kokesh* did not "set[] forth new, general principles for distinguishing 'punitive' and 'remedial' sanctions" for purposes other than the statute of limitations in 28 U.S.C. § 2462. *Id.* at 106–07. Plaintiffs' reliance on this concurrence is thus doubly misplaced.

is immaterial" to the Seventh Amendment analysis. *Jarkesy*, 603 U.S. at 122. In any event, to the extent a bar or suspension can be analogized to any court-ordered remedies, they are plainly more analogous to the equitable relief than to legal remedies like damages. *See, e.g.*, *Jarkesy v. SEC*, 34 F.4th 446, 454 (5th Cir. 2022) (concluding that the SEC's attempt "to ban Jarkesy from participation in securities industry activities" was an "equitable remed[y]").[8]

Plaintiffs' Seventh Amendment claim should be dismissed for these reasons.

*iii. Article III (Count Two)*

Under the "public rights" exception, the Supreme Court has made clear that claims "unknown to the common law" can be assigned to agency adjudicators without offending Article III or the Seventh Amendment. *Jarkesy*, 603 U.S. at 127. The statute governing the follow-on administrative proceedings here, which permits the Commission to issue a remedial order against an enjoined investment adviser when it is "in the public interest," 15 U.S.C. § 80b-3(f), is not analogous to a common law cause of action. *See* Mot. 17, 20. Plaintiffs do not argue otherwise. And neither of Plaintiffs' alternative arguments are persuasive.

First, Plaintiffs argue that *Jarkesy* limited the public-rights exception to "cases involving revenue collection, foreign commerce, immigration, tariffs, relations with Indian tribes, and the granting of public benefits." Opp. 21 (citing *Jarkesy*, 603 U.S. at 128–30; *id.* at 152–53 (Gorsuch, J., concurring)). But *Jarkesy* never claimed that it was exhaustively cataloguing all types of public-rights matters when it referenced some in its analysis. Indeed, *Jarkesy* expressly disclaimed that it was doing so. 603 U.S. at 131 ("The Court has not definitively explained the distinction between public and private rights, and we do not claim to do so today." (quotation omitted)). Consistent

---

[8] Like the Supreme Court on review, the Fifth Circuit applied the Seventh Amendment to the SEC proceedings in *Jarkesy* only because—unlike in this case—the SEC also sought civil monetary penalties. *See Jarkesy*, 34 F.4th at 454.

with this disclaimer, *Jarkesy* cited the discussion of historical revenue collection practices in *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272 (1855), only as one "example" of a justification for the application of the public rights exception. *Id.*

Second, Plaintiffs argue that if a bar or suspension from the securities industry is construed as more analogous to an equitable remedy for Seventh Amendment purposes, that necessarily means it is a case in "Law and Equity" under Article III, and therefore cannot be assigned to an agency for adjudication.[9] Opp. 23; *see also id.* at 20–21 (making same argument in context of Seventh Amendment claim). But this interpretation is directly contrary to *Jarkesy*. As *Jarkesy* reiterated, matters that cannot be removed from Article III courts are those that are "made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789." 603 U.S. at 127 (citation omitted). Plaintiffs do not meaningfully respond to the SEC's showing that the at-issue provisions permitting the Commission to determine whether and how it serves the public interest to issue a remedial order are not "borrow[ed]" from the common law. *Id.* at 136–37; *see also* Mot. 17, 20. That a bar or suspension from the securities industry issued under these provisions is more analogous to an equitable remedy than a legal one does not alter this result. As the Supreme Court has long held, even when public rights "may be presented in such form that the judicial power is capable of acting on them," Congress still "may or may not bring [them] within the cognizance of the courts of the United States, as it may deem proper." *Murray's Lessee*, 59 U.S. at 284.

*iv. Statutory Right to Hearing (Count Four)*

Plaintiffs do not contest that their statutory right-to-hearing claim is incompatible with the D.C. Circuit's decision in *Kornman*, 592 F.3d 173. While Plaintiffs attempt to argue that *Loper*

[9] Plaintiffs also argue that the remedial order is legal rather than equitable in nature because it is punitive. Plaintiffs are wrong for the reasons explained above. *See supra* pp. 11–12.

*Bright* has overruled *Kornman*, Plaintiffs do not engage at all with the Supreme Court's explicit assurance in *Loper Bright* that the decision did not overrule "prior cases that relied on the *Chevron* framework."[10] *Loper Bright*, 603 U.S. at 412; *see also* Mot. 24. *Kornman* remains binding law pursuant to *Loper Bright* itself, and Plaintiffs' statutory right-to-hearing claim fails on that basis alone. Moreover, Plaintiffs do not contest that they received—and have availed themselves—of the opportunity to be heard vis-à-vis filing an opposition to the Division of Enforcement's summary disposition motion. *See* Mot. 23–24.

Regardless, *Kornman*'s interpretation of 15 U.S.C. § 80b-3(f) is the best interpretation for all the reasons the SEC has already explained. *See* Mot. 22. Plaintiffs do not even attempt to engage with that explanation, instead merely summarily asserting that the Advisers Act and the APA are "crystal clear" in requiring hearings for any and all administrative proceedings, even where there does not exist any dispute of material fact. Opp. 26. For example, Plaintiffs ignore that the Supreme Court has consistently and historically held—long before *Chevron* was decided in 1984—that statutory hearing requirements do not require agencies to hold evidentiary hearings where no genuine dispute of material fact exists to be addressed at such a hearing. *See* Mot. 22–23 (collecting cases). Indeed, the Supreme Court in *Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 621 (1973)—decided over a decade before *Chevron*—"construed text virtually identical to the Advisers Act in concluding that the phrase 'notice and opportunity for hearing to the applicant' did not always require an evidentiary hearing." *Kornman*, 592 F.3d at 182.

Despite Plaintiffs' lack of any substantive argument against the SEC's summary disposition rule, Plaintiffs suggest that the rule is simply unfair. In particular, Plaintiffs protest

---

10 Plaintiffs drop any argument that Supreme Court's decision in *Kisor v. Wilkie*, 588 U.S. 558 (2019), "effectively overruled" *Kornman*. *See* Mot. 24–25; *see generally* Opp. (failing to discuss argument).

that the SEC "gets to decide whether there is a dispute over a material fact." Opp. 27. But when the SEC's Division of Enforcement brings a motion for summary disposition on the theory that there remains no dispute of material fact, the respondent has the opportunity to argue that summary disposition is inappropriate because there does remain some dispute of material fact. Indeed, that is exactly what Plaintiffs have done here. In their response to the Division of Enforcement's motion for summary disposition, Plaintiffs argue that "summary disposition here is not appropriate given the myriad factual disputes still to be adjudicated." Resps. David Sztrom's & Michael Sztrom's Opp. to Division of Enforcement's Mot. for Summ. Disposition Pursuant to Commission Rule of Practice 250 at 13–14, *In the Matter of Michael Sztrom*, File No. 3-21400 (SEC Sept. 28, 2023), https://www.sec.gov/files/litigation/apdocuments/3-21400-2023-09-28-resp-opposition.pdf. Should the Commission ultimately agree with the Division of Enforcement that there remains no dispute of material fact, Plaintiffs are free to appeal that finding to the Court of Appeals. *See* 15 U.S.C. § 80b-13(a).[11]

While the majority of Plaintiffs' right-to-hearing argument is focused on the SEC's

[11] Plaintiffs assert that "the analysis the SEC is suggesting is beyond the scope of a Rule 12(b)(6) motion and thus improper." Opp. 28 n.7. It is unclear to what "analysis" Plaintiffs refer, nor why such analysis would be "beyond the scope" of the instant motion. Plaintiffs relatedly assert that their complaint "do[es] not support the presumption that it is 'in the public interest'" to impose remedial sanctions upon them. *Id*. at 27–28 & n.7. But whether the public interest supports sanctions is irrelevant to Plaintiffs' claims in this case. Plaintiffs do not here challenge the substance of any decision, much less any public-interest determination—rather, Plaintiffs bring pre-enforcement procedural challenges to the proceeding itself. Again, to the extent the Commission ultimately concludes that it is in the public interest to impose remedial sanctions, Plaintiffs are free to appeal that finding. *See* 15 U.S.C. § 80b-13(a); *see, e.g.*, *Kornman*, 592 F.3d at 176 (appealing SEC's imposition of sanction in part based on public-interest finding).

Indeed, Plaintiffs' emphasis on the public interest highlights the prematurity of the instant pre-enforcement suit. As explained, the proper vehicle for at least Plaintiffs' Seventh Amendment and right-to-hearing claims is an appeal to the appropriate Court of Appeals following an order determining whether there exists any factual dispute precluding summary disposition and whether the public interest supports a yet-to-be-determined remedy. *See* Mot. 6–12 (explaining that 15 U.S.C. § 80b-13(a) precludes these claims); *supra* pp. 1–8 (same).

summary disposition rule and *Kornman*, *see* Opp. 24–27, Plaintiffs also summarily assert that the APA entitles them to a hearing, *see id.* at 26–27 ("Similarly, the APA is clear as to its own hearing requirements where administrative proceedings are involved[.]"). As with their argument related to the SEC's summary disposition rule, however, Plaintiffs provide no justification for this assertion, *see generally id.* at 26–27, and fail entirely to engage with any of the SEC's arguments, *see* Mot. 25. The APA does not entitle Plaintiffs to a hearing for the reasons the SEC has previously explained. *See id*.

Accordingly, Plaintiffs' right-to-hearing claim fails.

## III. CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court dismiss the Sztroms' complaint in its entirety.

Dated: May 20, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

CHRISTOPHER HALL
Assistant Director
Federal Programs Branch

*/s/ Cassandra M. Snyder*
Cassandra M. Snyder (DC Bar No. 1671667)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 451-7729
Email: cassandra.m.snyder@usdoj.gov

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2025, a copy of the foregoing document was filed electronically with the Clerk of this Court. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ Cassandra M. Snyder*
Cassandra M. Snyder