UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL SZTROM and DAVID SZTROM**,<br><br>    Plaintiffs,<br><br>    v.<br><br>**SECURITIES AND EXCHANGE COMMISSION**,<br><br>    Defendant. | Case No. 24-cv-3548 (CRC) |

**MEMORANDUM OPINION**

The Securities and Exchange Commission ("SEC") sued California-based investment advisors Michael and David Sztrom for fraud in the U.S. District Court for the Southern District of California. The Sztroms settled the case for $25,000 each without admitting liability. The SEC then initiated an in-house "follow on" proceeding, which purportedly seeks to bar the duo from working in the securities industry. The Sztroms parried with this challenge to the constitutionality and fairness of that follow-on action.

Recent years have seen a weakening of the SEC's administrative enforcement regime. In 2024, for example, the Supreme Court held that when the SEC seeks civil monetary penalties against a defendant for securities fraud, the Seventh Amendment entitles the defendant to a jury trial and, as a result, the SEC may not proceed before a non-jury internal tribunal. See SEC v. Jarkesy, 603 U.S. 109 (2024). And earlier this year, in another challenge to the constitutionality of an SEC follow-on action in this court, the Justice Department indicated that it would no longer defend the tenure protections of SEC (and other) administrative law judges against claims that they violate separation-of-powers principles and Article II of the Constitution. See Lemelson v. SEC, 793 F. Supp. 3d 1, 17–18 (D.D.C. 2025).

Yet, despite these developments, the arguments advanced by the Sztroms for enjoining the SEC's follow-on proceeding against them are either foreclosed by binding precedent or beyond this Court's jurisdiction to consider. The Court will, accordingly, grant the SEC's motion to dismiss the Sztroms' complaint.

## I. Background

Michael Sztrom and his son David are investment advisors based in California. Compl. ¶ 1. In January 2021, the SEC filed a complaint against both in the U.S. District Court for the Southern District of California, alleging that they breached their fiduciary duties and defrauded clients in violation of the Investment Advisers Act of 1940. Id. In particular, the SEC claimed that between 2015 and 2018, David "assisted" Michael in "accessing confidential client information" and "gaining access to an associated broker dealer" in order to allow Michael to advise clients and execute trades despite that Michael had no association with a registered investment adviser at the time. Id. ¶¶ 1, 18. In October 2022, the Sztroms consented to an entry of final judgment enjoining them from violating a variety of securities laws and regulations and ordering them each to pay a $25,000 civil monetary penalty. Id. ¶ 20. Neither admitted or denied the allegations. Id.

Roughly seven months later in May 2023, the SEC instituted a follow-on administrative proceeding against the Sztroms. Id. ¶ 21. In a follow-on proceeding, the Commission, after notice and the opportunity for a hearing, may impose a variety of remedial sanctions on an investment advisor if (1) doing so "is in the public interest," and (2) the investment advisor was previously "enjoined by . . . any court of competent jurisdiction" from acting in certain securities-related capacities or from engaging in certain securities-related activities. 15 U.S.C. §§ 80b-3(e)(4), (f). Sanctions available to the Commission range from censure to debarment. Id.

Remedial orders resulting from follow-on proceedings may be appealed to the appropriate regional federal court of appeals or to the D.C. Circuit.  15 U.S.C. § 80b-13(a).

      In the follow-on procedures against the Sztroms, the SEC apparently seeks to bar the duo from working in the securities industry.  Compl. ¶ 22.  In September 2023, the SEC's Division of Enforcement filed a motion for summary disposition.  Id.  The relevant regulation allows for a dispositive ruling on such a motion when "there is no genuine issue with regard to any material fact and . . . the movant is entitled to summary disposition as a matter of law."  17 C.F.R. § 201.250(b).  The SEC had yet to rule on the motion for summary disposition when the Sztroms filed the present complaint in December 2024.  Compl. ¶ 24.

      The complaint advances four claims.  Count I alleges that the follow-on proceeding violates the Due Process Clause of the Fifth Amendment because it entails the adjudication of charges that were investigated and prosecuted by the same agency.  Count II maintains that the follow-on proceeding violates Article III because only federal courts possess the "judicial power" to adjudicate "cases or controversies" of the kind involved here.  Count III asserts that the proceeding violates the Fifth and Seventh Amendments because the government cannot deprive the Sztroms of their rights "to pursue their chosen profession" except through trial by a jury.  And Count IV alleges that the SEC has deprived the Sztroms of their right to a hearing under the Advisers Act and the Administrative Procedure Act.  See 15 U.S.C. § 80b-3(f); 5 U.S.C. §§ 554(b)(1), 554(c)(2), 556(d).  The SEC moves to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure Rule (12)(b)(1) and failure to state a claim under Rule 12(b)(6).

## II. Legal Standards

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). To survive dismissal under Rule 12(b)(1), a plaintiff "bears the burden of demonstrating" that the Court possesses subject-matter jurisdiction over the case. Shuler v. United States, 531 F.3d 930, 932 (D.C. Cir. 2008). "On a motion to dismiss under Rule 12(b)(1) for lack of subject[-]matter jurisdiction, the nonmoving party is entitled to all reasonable inferences." Daniels v. Union Pacific R. Co., 480 F. Supp. 2d 191, 194 (D.D.C. 2007). Yet, "it remains the plaintiff's burden to prove subject-matter jurisdiction by a preponderance of the evidence." Henry v. Azar, 518 F. Supp. 3d 520, 525 (D.D.C. 2021).

When analyzing a motion to dismiss under Rule 12(b)(6), the Court "must treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Giliana v. Blinken, 596 F. Supp. 3d 13, 17 (D.D.C. 2022) (Cooper, J.) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000)). However, a court need not accept inferences drawn by the plaintiff that are unsupported by facts alleged in the complaint, nor accept a plaintiff's legal conclusions as true. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

## III. Analysis

The SEC moves to dismiss Count I, alleging a violation of the Sztroms' due process rights, because binding D.C. Circuit precedent forecloses that claim. The agency moves to dismiss Count II on the ground that the follow-on proceeding concerns public rather than private rights and thus need not be heard in the first instance in an Article III court. And the Commission argues that this Court lacks jurisdiction over the jury-trial and hearing-rights claims, Counts III and IV, because Congress impliedly stripped district courts of jurisdiction over these

claims in the Advisers Act. The Court agrees with the SEC in each instance. It begins its analysis with the jurisdictional defenses (Counts III and IV) before moving to the first two claims.

### A. Jury Trial and Statutory Hearing Rights (Counts III & IV)

The SEC argues that Congress stripped the Court of subject-matter jurisdiction over the Sztroms' jury trial and statutory hearing rights claims. The test that guides courts' analysis as to whether Congress has impliedly removed district courts of jurisdiction is set forth in Thunder Basin Coal Co. v. Reich, 510 U.S. 200 (1994). The Court begins by asking whether Congress displayed a "fairly discernible" intent to preclude jurisdiction. Elgin v. Dep't of Treasury, 567 U.S. 1, 9–10 (2012) (quotation omitted). The answer here is clear: Congress intended for the courts of appeals to have exclusive jurisdiction to hear challenges to rules promulgated and orders issued under the Advisers Act. See 15 U.S.C. § 80b-13(a) ("[A] party aggrieved by an order issued by the Commission under this subchapter may obtain a review of such order in the [appropriate] United States court of appeals[.]"); N.Y. Republican State Comm. v. SEC, 799 F.3d 1126, 1130 (D.C. Cir. 2015) (noting that the D.C. Circuit has held identical statutory language to "vest[] the courts of appeals with exclusive jurisdiction to hear challenges to . . . [agency] orders").[1]

The Court next considers three factors to determine whether the claims are "of the type Congress intended to be reviewed within this statutory structure." Thunder Basin, 510 U.S. at 212. All three factors confirm that the Sztroms' claims fit the bill. First, a lack of jurisdiction in

---

[1] In light of N.Y. Republican State Comm., which suggests that Congress granted exclusive jurisdiction to the courts of appeals for claims such as the Sztroms', the Court wonders if it is necessary to conduct the Thunder Basin analysis. However, in the absence of language such as "exclusive" in the statute that would leave no doubt that Congress had stripped jurisdiction from the district courts, the Court will forge ahead.

this Court would not "foreclose all meaningful judicial review" because review of the SEC's determination would be available in the court of appeals. Id. at 212–13. Second, Counts III and IV challenge the rules of the proceedings themselves—the lack of a jury and the alleged lack of a statutorily-required hearing—and thus are not "wholly collateral" to the statutory review scheme. Id. at 212; Jarkesy v. S.E.C., 803 F.3d 9, 24 (D.C. Cir. 2015) ("Jarkesy's constitutional and APA claims do not arise "outside" the SEC administrative enforcement scheme—they arise from actions the Commission took in the course of that scheme."). And finally, these two claims do not fall "outside the agency's expertise," Thunder Basin, 510 U.S. at 212, as they involve "the sorts of procedural . . . matters an agency often resolves on its way to a merits decision," Axon Enter., Inc. v. Fed. Trade Comm'n, 598 U.S. 175, 193 (2023) ("Axon"). Indeed, the SEC has previously addressed these types of claims in its enforcement proceedings. See, e.g., Jarkesy, 9 F.3d at 28 ("Jarkesy underestimates the Commission. He narrowly focuses on the Commission's expertise in the securities laws it applies. And he overlooks the Commission's development of concurrent familiarity in issues that regularly arise in the course of its proceedings. Jarkesy's proceeding is a case in point.").

Axon does not dictate otherwise, as the Sztroms suggest. Pls.' s Opp'n at 6–9. Axon repeatedly distinguishes between "challenges . . . to the structure or very existence of any agency" and "to the commonplace procedures agencies use to make . . . decision[s]." 598 U.S. at 189; see also id. at 191, 193 (similar); Lemelson, 793 F. Supp. 3d. at 9 (considering a jury trial right challenge to SEC follow-on proceedings and explaining that "Axon ultimately held that preclusion would foreclose meaningful judicial review, but not in a way that bears on this case"). Counts III and IV concern the procedures the agency uses, rather than the constitutionality of its structure or its very existence. This Court therefore cannot consider those claims.

B.  Due Process (Count I)

The Sztroms allege that the combining of prosecutorial and adjudicative functions in the follow-on proceeding violates their due process rights under the Fifth Amendment.  But that claim is squarely foreclosed by D.C. Circuit precedent.  In Blinder, Robinson & Co. v. SEC, 837 F.2d 1099, 1104 (D.C. Cir. 1998), the D.C. Circuit considered and rejected an identical claim.  It held that procedures by which "members of administrative agencies [] receive the results of investigations, [] approve the filing of charges or formal complaints instituting enforcement proceedings, and then [] participate in the ensuing hearings" do not "violate due process of law." Id. at 1106 (quoting Withrow v. Larkin, 421 U.S. 35, 56 (1975)).  So too here: the Sztroms cannot state a claim based on any alleged "bias" stemming from the fact that the SEC brought the initial charges against them.  Compl. ¶ 33.

While acknowledging that their due process claim is "in tension" with Blinder, the Sztroms urge this Court to disregard Blinder's holding because the decision is at odds with more recent decisions from the Supreme Court.  Pls.'s Opp'n at 15.  But none of the cases the Sztroms cite overturn Blinder, either directly or by implication.  Those cases address, at most, ancillary issues, including: the judiciary's deference to agencies in the rulemaking process, see Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024); whether a state judge hearing a case in which he previously played a significant role violates due process, see Williams v. Pa., 579 U.S. 1 (2016); and the SEC's ability to enforce civil monetary penalties through administrative proceedings, see SEC v. Jarkesy, 603 U.S. 109 (2024).  None of those issues address the combining of adjudicative and prosecutorial functions in an agency.  And general changes in administrative law or in the realm of due process are not sufficient to "eviscerate" Blinder's reasoning, as would be necessary for the case to overruled by implication.  See Lemelson, 793 F.

3d at 13 (discussing nearly identical arguments concerning Blinder's applicability amidst changes in doctrine and explaining that "[Plaintiff] points to no case that 'eviscerates' Blinder's reasoning").

Perhaps recognizing as much, the Sztroms opine that "what the last decade of constitutional and administrative law teaches us is that the SEC always loses," Pls' Opp'n at 20, implying that it is the job of this Court to predict how the law *might* change. But this Court's role is to apply the law as it is today. And sitting here today, Blinder controls and forecloses the Sztroms' due process claim. See Lemelson, 793 F. Supp. 3d at 14 (noting that the D.C. Circuit continues to apply Blinder despite recent changes in Supreme Court doctrine).

    C.  Article III (Count II)

Finally, the Sztroms claim that the SEC's adjudication of whether they should be barred from the securities industry violates Article III of the Constitution, which vests the "judicial [p]ower" of the United States in the federal courts, not executive branch agencies. U.S. Const. art. III, § 1. Congress may not divest the federal courts of their authority to hear in the first instance cases that concern "private rights." See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC, 584 U.S. 325, 334, 345 (2018). Where "public rights" are concerned, however, "no involvement by an Article III court in the initial adjudication is necessary." Jarkesy, 603 U.S. at 127–28. This public-private rights distinction is not always clearly delineated. Id. But the Sztroms' case is plainly not "the stuff of traditional actions at common law tried by the courts at Westminster in 1789," which tends to be the "hallmark" of private rights. Id. at 127–28 (citation omitted); see also Lemelson, 793 F. Supp. 3d at 15–16 (analyzing a similar claim and explaining that Jarkesy does not change the analysis when "the agency brings claims unknown to common law" (citation and quotation omitted)). Instead, the SEC, in both

"concept and execution," is pursuing a "self-consciously novel" right of action—considering whether the remedial sanction punishment is in public interest—and remedy, a professional ban. Jarkesy, 603 U.S. at 136–137 (discussing how the Occupation Safety and Health Act of 1970 "did not borrow its cause of action from the common law"); see also Blinder, 837 F.2d at 1109 ("The issue before the district court . . . was manifestly not the question before the SEC in the administrative proceeding . . . .The precise question in the SEC proceeding was whether sanctions should be imposed 'in the public interest.'").  And while the Commission does not "bring or adjudicate claims that trace[] their ancestry to the common law," Jarkesy, 603 U.S. at 137, it has had the power to bring follow-on administrative proceedings for "the better part of a century, and no court has questioned its authority to do so," Def's Mot. at 20 (comparing that duration of time to the far newer civil monetary provision at issue in the Supreme Court's opinion in Jarkesy); see also Lemelson, 793 F. Supp. 3d at 17 (similar).  This Court will not be the first.

    The Sztroms counter with Justice Gorsuch's concurrence in Jarkesy—which listed certain public rights and observed that the public rights "exception is, after all, an *exception*"—to argue that the SEC lacks the power to bar them in the follow-on proceeding.  Pls.' Opp'n at 21 (quoting Jarkesy, 603 U.S. at 131).  But the Jarkesy majority emphasized that it was not cataloguing all public rights.  603 U.S. at 131 ("The Court has not definitively explained the distinction between public and private rights, and we do not claim to do so today." (cleaned up) (citation omitted)). The Sztroms also make a circular argument about the nature of the case against them, first suggesting that even cases in equity belong in Article III courts before arguing that the remedy sought is not an "equitable" one due to the severity of the punishment. Pls.' Opp' at 21–22.  But centuries of precedent make clear that that Congress may assign to agencies cases, like this one,

that deal with public rights, even when they also "may be presented in such form that the judicial power is capable of acting on them."  Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. 272, 284 (1855); see also Jarkesy, 603 U.S. at 127.

### IV.  Conclusion

For the foregoing reasons, the Court will grant the Defendant's Motion to Dismiss.  A separate Order shall accompany this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  January 8, 2026